## J. H. GRANT V. A. HASS.

### Decided March 25, 1903.

**1.—Charge—Intentional Injury—Spring Gun.**

The use of a dangerous agency with the intention of inflicting injury upon a trespasser, such as setting a spring gun on one's premises to protect a melon patch, unless circumstances exist to justify it, may properly be treated by the charge as actionable in law, if injury results.

**2.—Same—Justification—Theft by Night.**

The penal code justifies homicide in defense against theft by night only where the acts of the person killed indicate at the time an intent to commit the offense (Penal Code, arts. 674, 675) and would not excuse the setting a spring gun in advance of such manifestation of intent, where injury results to an innocent person.

**3.—Same—Contributory Negligence—Trespasser.**

One ignorant of the fact that the premises of 'another were guarded by a spring gun was not chargeable with contributory negligence from the mere fact that he passed through such premises for an innocent purpose.

Error from the District Court of Mills. Tried below before Hon. John W. Goodwin.

*Leonard Doughty,* for plaintiff in error.

*R. L. H. Williams,* for defendant in error.

FISHER, CHIEF JUSTICE.—This is an action by Hass against the defendant Grant for damages on account of injuries sustained by plaintiff resulting from the discharge of a spring gun, located upon the inclosed premises of the defendant. The amount sued for was $1000.

The defendant Grant in his answer alleged that the spring gun was set out by him in his inclosed field at nighttime for the purpose of protecting his melon crop against thieves; that previous to that time his melon patch had been depredated upon and melons stolen; that he guarded the melon patch in daytime, and only set out the gun at night; that the gun was set in a position to fire across the patch,—a wire was attached to the trigger running across the melon patch. The gun was loaded with powder and small shot, the range of which would not extend beyond the premises of the defendant; that he exercised proper caution and care in setting out the gun, and that his purpose and intention was that it should only be discharged at those who might be stealing his melons in the nighttime; that he removed the gun during the day; that plaintiff was guilty of negligence in going upon his premises, and in putting himself in a position to be shot; that he was shot in the nighttime, when he had invaded the premises for the purpose of stealing the melons.

A verdict and judgment were in favor of the plaintiff for $60. The charge of the trial court is as follows:

"1. If from the evidence in this case you believe that on the 24th day of July, 1901, the defendant J. H. Grant set upon his inclosed land

or premises a gun charged with gunpowder and shot and that he attached to the trigger of said gun a wire which he laid along or across defendant's melon patch in such manner as to conceal the wire, and in such manner that one walking across said melon patch might strike said wire with the foot and thereby discharge said gun, and with the intent on the part of defendant Grant that anyone trespassing on his said melon patch would strike said wire and discharge said gun; and if from the evidence you further believe that plaintiff A. Hass did on July 24, 1901, enter the inclosed premises of the defendant, and did strike said wire attached to the gun with his foot and thereby discharged the same, and was in consequence shot by said gun and injured; and if from the evidence you further believe that if from the time plaintiff Hass entered defendant's said inclosed land he did not know that said gun was so set and wired, and that he did not know that defendant Grant guarded and protected his melon patch with spring or wired gun or that he kept such guns on his said premises; and if from the evidence you further believe that said trespass by plaintiff upon the inclosed premises of defendant was in the daytime (as that term is hereinafter defined), or if from the evidence you believe that said trespass on said inclosure was in the nighttime (as that term is hereinafter defined), but said entry into said inclosure at nighttime, if it was at was at night, was not with intent on the part of plaintiff to steal defendant's melons, then you will find for plaintiff Hass. But if from the evidence you believe that said entry of plaintiff Hass upon said inclosure of defendant was in the nighttime, and with intent to steal the melons of defendant; and if from the evidence you believe that at the time he was shot by said spring gun or wired gun, if shot, he was in the act of stealing defendant's melon or melons, then you will find for the defendant Grant.

"2. By the terms 'daytime' and 'nighttime,' as used in this charge, is meant first by 'daytime' any time from thirty minutes before sunrise to thirty minutes after sunset; and by 'nighttime,' any time from thirty minutes after sunset to thirty minutes before sunrise.

"3. You are further instructed that if from the evidence you believe that at the time plaintiff Hass entered upon defendant's inclosed land he knew that defendant kept a spring or wired gun on his premises to guard and protect his melon patch from depredators, then you will find for defendant."

The balance of the charge is on the measure of damages, about which there is no complaint.

It appears from the facts that the defendant's field, wherein the melon patch was situated, was inclosed by a fence, and through it was no public or usually traveled road or highway; that the melon patch was some little distance from his residence, and that the year previous and the year that plaintiff was injured his patch had been depredated upon and melons stolen during the nighttime. The plaintiff made some effort

to guard the patch during the day, and the night that the injury occurred he set out a spring gun loaded with powder and small shot, near the melon patch, with the muzzle pointing across the same. To the trigger of the gun was attached a wire, which extended across the melon patch upon or near the ground, in such a position that one going between the gun and the end of the wire would strike the latter, and cause a discharge of the gun. The defendant's corn field was near the patch, and in it the gun was placed. The defendant put out the gun for the purpose of protecting his melon crop from thieves. He only placed it out at night and removed it in the daytime. Previous to putting out the gun he had notified some of his neighbors that he intended to protect his melons by means of a spring gun; but the plaintiff, before he entered the melon patch and was injured, had no notice or knowledge of the existence of the gun, nor did he know that the defendant guarded his patch by such means. The defendant was not present when the gun was fired, nor did he arrive on the scene until after.

The plaintiff with some members of his family was in camp near the fence of the defendant's field; and early on the morning of July 25, 1901, wishing to see the defendant about some guinea fowls and grass seeds, and get directions from him as to the road he should take to another place which he desired to visit, he started to the defendant's house, climbed the fence into the defendant's field, which was the nearest way from that point to the defendant's residence, when in walking through the field, close to the edge of the corn, with defendant's melon patch on his right, and between the same and the corn field, his foot struck the wire attached to the gun, which caused it to discharge, and about 300 shot struck and penetrated the plaintiff. The plaintiff did not see the wire nor the gun until after its discharge and he had received its contents. The gun was loaded with small shot, the range of which would not extend beyond the private grounds and premises of the defendant.

The evidence is conflicting as to the exact time that the gun was discharged and the plaintiff received its contents. According to his evidence it was in the daytime, as day time is defined by the charge of the court. According to the evidence offered by the defendant, the discharge of the gun was early in the morning, but in the nighttime, as defined by the charge of the court.

The evidence warrants a conclusion that the plaintiff in entering the defendant's field did so for the purpose stated by him in his testimony, without any intention to steal the defendant's melons, but was merely walking through the field to the defendant's house, in order to see him about the matters testified to by the plaintiff.

The plaintiff in error complains of the first section of the charge quoted, because it is on the weight of evidence, in that it assumes that the defendant would, as a matter of law, be liable if the jury should find that the facts existed which are submitted in the charge, and that the court should not, as a matter of law, assume that the combination of

facts stated would create liability, unless it should also be determined that the defendant was guilty of negligence or want of ordinary care in setting the spring gun upon his premises, and that the solution of these questions should be by the jury. If the liability is to be determined solely from the conditions existing at the point of time the spring gun was set, then there would be much force in the contention that that act, with its accompanying circumstances, should be submitted to and passed upon by the jury in determining the question whether the defendant was excusable or justifiable under the circumstances; but the facts of this case call for the application of a different principle, which will be stated later on.

On the subject of an owner in his absence defending and protecting his property by means of man-traps, spring guns and other dangerous agencies calculated to destroy life or inflict serious bodily injury, some of the English cases as well as a few from the American courts (Deane v. Clayton, 7 Taunt., 489; Ilott v. Wilkes, 3 B. & Ald., 304; Bird v. Holbrook, 4 Bing., 628; Loomis v. Terry, 17 Wend., 496; Johnson v. Patterson, 14 Conn., 1; Townsend v. Wathen, 9 East, 142; Hooker v. Miller, 37 Iowa, 613; same case, 18 Am. Rep., 18) create liability as a matter of law, merely from the fact that a known dangerous agency is intentionally employed to prevent or repel trespass, and in this respect justly, as said in Aldrich v. Wright, 53 N. H., 398 (same case, 16 Am. Rep., 347), and State v. Barr, 11 Wash., 485, they have incorrectly turned a question of fact into one of law, for the reason that the liability or nonliability of employing a dangerous agency upon the private grounds of the owner, and setting it in motion, so as to inflict injury, are questions to be determined from all the varying facts and circumstances of the particular case.

In the defense of person or property, one can not go further than is reasonably necessary for that purpose; and in pursuit of this purpose he may employ agencies and means destructive of life, provided he acts at a time and place and under circumstances authorized and justified by law. The determination of this question is one of law and fact, the latter of which is within the province of the jury. It does not follow from the admission of this principle that the charge is subject to the objection urged, for it is not, when the facts of this case are fully understood. The chronological order of events and their causation that may happen with the accompanying explanatory acts and circumstances from the time that the spring gun is set out are not in all cases necessary to be considered in determining what effect should be given to the discharge of the gun under the circumstances and condition then existing; for in the latter case, the discharge and the consequent injury inflicted upon a trespasser may be without excuse or justification, although setting the gun may have been lawful and without negligence, or want of care. The owner of private grounds is under no duty to keep it in safe condition for the protection of a mere trespasser. Dobbins v. Missouri K. & T. Ry. Co., 91 Texas, 62 · and one of this class

who intrudes must take the premises as he finds them. Parker v. Portland Pub Co., 69 Me., 173. But when the owner employs upon his premises and sets in motion dangerous agencies, such as spring guns, man-traps, etc., of a nature calculated to cause death or inflict serious bodily injury, with the intention of inflicting injury upon a trespasser, and injury results, he is liable, unless facts and circumstances exist which in law would amount to an excuse or justification. As said in the case of Dobbins v. Missouri, K. & T. Ry. Co., supra, the liability in such a case is not based upon the idea that the owner owes any duty to a trespasser to keep his premises in a reasonably safe condition, but it is predicated upon the fact that he owes a duty to such a person not to intentionally injure him; or, as some of the cases state the rule, he is liable when he recklessly, or wantonly, or intentionally inflicts the injury. Barney v. Hannibal Ry. Co., 26 Law. Rep. Ann., 850; Delaware, L. & W. Ry. Co. v. Reich, 41 Law. Rep. Ann., 833; Phillips v. Library, 55 N. J. L., 310; Walsh v. Fitchburg Ry. Co., 27 Law. Rep. Ann., 724.

This last case, together with Aldridge, v. Wright, 16 Am. Rep., 340, are instructive on account of the citation of a number of cases to some extent similar to the one in hand. In Bird, v. Holbrook, 4 Bing., 637, it appears that the defendant set a spring gun in his walled garden for the protection of his property, some of which had been previously stolen from the garden. The plaintiff climbed over the wall in pursuit of a stray fowl, at the time in ignorance of the existence of the spring gun, with which he came in contact, causing its discharge, which inflicted injuries upon him. In defense it was contended that the defendant had the right to protect his property by means of a spring gun, and that he was not liable to a trespasser unlawfully upon his premises. It was held that the action was maintainable, otherwise it would result that a mere trespass would be capital offense. But in the course of the opinion delivered in the case, stress is laid upon the fact that liability exists by reason of the intention and purpose to injure.

In Hooker v. Miller, 37 Iowa, 613 (same case, 18 Am. Rep., 18), it appears that the defendant set a spring gun in his vineyard to protect his fruit from trespassers who were in the habit of appropriating it. The plaintiff, having no knowledge of the gun, entered the vineyard for the purpose of stealing fruit, when the gun was discharged and thereby injured him. The defendant was held liable. It appears from the facts that the plaintiff entered the vineyard in the nighttime for the purpose of theft of the fruit, which, under the laws of that State, was a misdemeanor; and, from the manner in which the case is treated in the opinion of the court, it is obvious that no such statute existed in Iowa similar to the one that we have in this State that justifies and excuses the killing of one who is about to commit the crime of theft in the nighttime. But the solution of the question of liability is placed upon the high ground that the duty looking to the protection of human life will not countenance its destruction merely for an act that amounts to a trespass or a misdemeanor. That an act towards property punishable

as a misdemeanor, so far as justifying homicide, is no more than a mere trespass, and that intentional resort to dangerous means to prevent it is justifiable in neither instance.

The report of the case of State v. Barr, 11 Wash., 482, shows that the defendant was convicted of murder in the second degree, which judgment the court on appeal affirmed. The defendant, on absenting himself from his cabin, fastened the door and attached to the inside a spring gun, with the purpose that it should be discharged at and against anyone who might undertake to enter the cabin by the door. The deceased, during the absence of the defendant, thinking no one lived in or occupied the cabin, for an innocent purpose, undertook to enter by the door, which caused the discharge of the gun, the contents of which entered his body and caused his death.

The defense was that the defendant had the absolute and lawful right to set the spring gun, and that he owed no duty to a trespasser. Consequently that he had committed no crime. In effect it was held that means calculated to produce death or serious bodily harm could not be intentionally resorted to for the purpose of preventing a trespass.

In Jobe v. Houston, 23 S. W. Rep., 408, and Ford v. Taggart, 4 Texas, 492, it is held by the courts of this State that it is no justification for the killing of animals that they were trespassing upon another's premises, or doing injury to his property.

If we view the conduct of the plaintiff in entering the melon patch of the defendant as that of a mere trespasser, or as one entering in daytime with the intention of stealing, the facts of this case call for an application of the principles decided in the foregoing cases, and the defendant was properly held liable.

Article 790 of the Penal Code makes the theft of melons a misdemeanor, punishable by fine not exceeding $100. Article 674, Penal Code, which justifies homicide in defense of property, in so far as it refers to the crime of theft is as follows: "Homicide is permitted in the necessary defense of person or property under the circumstances and subject to the rules here set forth." Article 675 provides that homicide for theft at night is justifiable, when committed under the following circumstances: "First. It must reasonably appear by acts, or by words coupled with the acts of the person killed, that it was the purpose and intent of such person to commit one of the offenses above named," which includes theft at night. "Second. The killing must take place while the person killed was in the act of committing the offense, or after some act done by him showing evidently an intent to commit such offense. Third. It must take place before the offense committed by the party killed is actually completed. Eighth. In case of burglary and theft by night, the homicide is justifiable at any time while the offender is in the building, or at the place where the theft is committed, or is within reach of gunshot from such place or building."

If the plaintiff had entered the premises at night, with the purpose and intention of stealing the melons, and his conduct had been of such a

character as to make it reasonably appear that such was his purpose, his death by killing would have been justifiable. The killing must take place while the offender is in the act of committing the offense, or after some act done by him showing an intention to commit the offense; or if the theft is completed, the killing must occur within gunshot distance of the place where the theft was committed.

We are also of the opinion that, in a proper case, the rule of law just stated will justify the homicide of one who in the nighttime unlawfully invades or trespasses upon the premises of another, with no purpose or intention to steal, but whose conduct is of such a character as to make it reasonably appear to one exercising proper care and caution that such was his intention. The apprehension upon the part of the slayer must be reasonable, not merely conjectural, such as might arise from the mere presence of the intruder, but must be predicated upon some act upon the part of the deceased of a nature calculated to arouse in the mind of one of ordinary prudence and caution that a theft is about to be committed. But in our opinion the facts of this case, as settled by the verdict of the jury, or when considered as aided by the verdict viewed in the light of the charge, render inapplicable either of the defenses stated.

From these considerations it will be assumed that the plaintiff entered the premises without knowledge of the existence of the spring gun, or that the defendant guarded and protected his melon patch by the use of such means; that he either entered in the daytime or nighttime, for as to this fact the evidence is conflicting. In the manner that the issue was submitted by the charge of the court, the jury could find for plaintiff in either event; therefore, it can not be said that the verdict determines the time when the entry was made. But it may be assumed that if he entered the premises in the night, it was not with the purpose and intent to steal, for if such had been the case, the jury could not, in view of the charge of the court, have found in favor of the plaintiff. The charge of the court does, in effect, assume that the gun, loaded and charged as it was shown to be, was a deadly weapon, or, more properly speaking, one calculated to produce serious bodily injury; and this assumption, in view of the facts, was the only conclusion that could be reached; and then in effect instructs the jury that the use and employment of such means would be unlawful and without justification, unless the plaintiff entered the premises in the nighttime for the purpose of stealing the defendant's melons. The determination of this fact by the verdict in favor of the innocence of the plaintiff of any criminal purpose and intent, puts him, in entering the premises, so far as the right of the defendant to use violent and dangerous means to repel him is concerned, in the attitude of a mere trespasser, whom the defendant would not be justified in firing upon, unless the entry in the nighttime, although not criminally made, was under such circumstances and with such conduct as was reasonably calculated to create in the mind of the

defendant, acting with ordinary prudence, the belief that the plaintiff was about to steal the melons.

Under the facts of the case, this defense is not available for two reasons: First. Because it appears that at the time that the gun was discharged, the only act of the plaintiff indicating an unlawful purpose was his mere presence in the defendant's inclosure near the melon patch. There were no words, acts or conduct up to that time, other than might arise from his mere presence in near proximity to the patch, that indicated a purpose and intent to steal. In order under the statute to justify firing upon the intruder upon the supposition that he was about to steal, it must be done after words, acts or conduct upon his part indicating that such was his intent or purpose. If the defendant had been present and actually fired the gun, in the light of the facts then existing, he would have been guilty of a crime, as the assault would not have been justifiable. When he set the spring gun and undertook by that means to use and put in motion a deadly weapon, the discharge of which he must have known would inflict seriously bodily injury, its discharge could only be justified by the conditions existing at that time; and if they were such as would not have excused him if he was present and actually fired the gun, they would not excuse him if fired in his absence. He can not legally indirectly do that which the law directly prohibits.

The views just expressed are limited to the facts of this case, and are not intended to state a rule of law applicable to all cases that might arise when a trespasser is injured by the owner when found upon his premises. There may be parts of a premises, such as rooms of a residence, that may be so private and secluded that the bare presence therein in the nighttime of an intruder might be considered an act or conduct indicating a purpose to commit some one or more of the crimes that justfy homicide at night, and in such a case homicide, if committed, might be excusable. Nor do we mean to intimate that the owner may not, under some circumstances, resort to dangerous means to prevent a forcible and violent invasion or destruction of his property. The act of the intruder may be so wanton, willful and destructive that exceptional instances might arise that would authorize the application of force to force, which might be necessary to overcome the destructive violence of the intruder.

Second. If it is possible that we are mistaken in the views just expressed and the construction we have placed upon the evidence, the defense interposed would not justify, because it appears from the facts that the discharge of the gun that occasioned the injury was hours after it was placed in position, and at a time when the defendant was not present. To perfect this defense he must act upon the reasonable assumption, predicated upon the immediate conduct of the intruder that he is about to commit the offense, and will do so, unless the dangerous means employed prevent him. The defense arises at the time that the shot is fired, or upon conduct existing immediately preceding it, and can

not be predicated by relation back to the time that the spring gun was set, so as to make that act operate as an excuse for conduct which subsequently occurred, which in its nature could not be available as a defense unless the defendant was present, so as to act upon the reasonable appearances indicating that the trespasser is about to steal.

As said before, the defendant may have lawfully placed in position a spring gun as a protection to his property against a thief in the nighttime, and if one of that class is shot at night, he would not be liable; but he could not lawfully employ it in firing upon a mere trespasser, unless upon one whose conduct in the nighttime was of a character to produce the reasonable belief that he was about to steal.

The very nature of the defense, to be justifiable upon this last ground, calls for the presence of the party inflicting the injury at the time and place it occurred, for his state of mind aroused and then existing by the conduct of the trespasser as he views it, is what gives rise to the occasion to fire the shot, and is what completes the defense.

In one of the charges of the plaintiff in error, which was refused by the court, an instruction is asked to the effect that if the defendant, in the use of ordinary care, set out the spring gun at night, under the reasonable belief and anticipation that no one but a thief at night would go before the gun, then he would not be liable to the plaintiff.

Every man is held to the necessary, natural and probable consequences of his act, the contemplation of which the law presumes, whether or not he does so in fact. The defendant, it is true, placed the gun with the view of firing upon a thief, with the intent and purpose to injure, and with the knowledge that the means employed were of a nature calculated to produce that result. If the gun was fired at a time and under circumstances for which the law would furnish no excuse or justification, the fact that it was prepared and set for a lawful purpose would furnish no excuse for the consequences that resulted from its unlawful discharge. The setting of the gun is one of the incidents in the chain of causation that produced the effect, but the immediate and proximate cause of the injury was its discharge at a time and under circumstances which made the act unlawful. The original purpose, however innocent, became immediately criminal as soon as the innocent means were employed in an unlawful way. The intent to injure some one was in the contemplation of the defendant when he set out the gun. The fact that in executing this purpose a mistake was made and one of a class was injured that was not within his contemplation, may remove the act from a higher to a lesser degree of criminality, but will not excuse. If one with so little regard for human life sets out a spring gun with the purpose and intent to injure, he must accept the chances of its discharge at the wrong time, and under circumstances that may occasion injury to an innocent trespasser. He can not be heard to say that that was a consequence unforeseen, and therefore it was not the proximate result of his acts.

It is contended that the court erred in not submitting to the jury the

question of contributory negligence. The court did instruct the jury that the plaintiff could not recover if when he entered the premises he had notice of the existence of the spring gun, or if he knew that the defendant guarded his premises by such means. Further than as the question was submitted by the charge, we do not believe that the issue of contributory negligence was in the case. Plaintiff, when injured, was walking through the defendant's field near the melon patch, going to the latter's residence.

There is no evidence whatever of a want of care upon the part of plaintiff, and the evidence shows that he did not see the gun or wire attached to the same until after he came in contact with it and the gun discharged. The evidence does not show that the plaintiff possessed knowledge of any fact that would arouse anticipation that he would likely encounter dangerous agencies to life, planted and fixed in defendant's field. He was not bound to guard against a danger that he possessed no knowledge of and had no reasonable expectation existed. A similar defense was raised in Hooker v. Miller, 37 Iowa, 613, but was refused by the court.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*