[No. 7025.   Decided December 18, 1907.]

THE STATE OF WASHINGTON, *Respondent*, v. JULIUS
MARFAUDILLE, *whose true name is* EUGENIO
BASTIANELLO, *Appellant.*[1]

JURY—EXAMINATION—BIAS.   Upon a prosecution for a homicide,
committed by rigging a spring gun in a trunk, the defendant is en-
titled to ask veniremen, upon their *voir dire*, whether the fact of a
death from such acts would create any prejudice or bias against the
defendant, and it is prejudicial error to sustain objections thereto.

HOMICIDE—JUSTIFICATION—DEFENSE OF PROPERTY.   In a prosecu-
tion for a homicide committed by rigging a spring gun in a trunk,
it is error to assume that the law prohibited the setting of a spring
gun except when necessary to prevent a capital crime; since homi-
cide for the prevention of any forcible and atrocious crime is jus-
tifiable.

SAME—MURDER IN SECOND DEGREE—INTENT AND MALICE—QUESTION
FOR JURY.   In a prosecution for a homicide by the rigging of a
spring gun in a trunk, it is error to sanction the prosecuting attor-
ney's statement that the defendant would be guilty of murder in the
second degree, if death resulted from his act in setting a spring gun,
and that the same would be a question of law for the court; since
the elements of both malice and intent must be determined by the
jury.

SAME—EVIDENCE—WARNING OF SPRING GUN—ADMISSIBILITY.   In a
prosecution for homicide by the rigging of a spring gun in a trunk,
evidence that the defendant warned the deceased of the gun, while
not a defense unless deceased deliberately attempted suicide, might
be material on the question of malice.

CRIMINAL LAW — REPUTATION — DEFENDANT — EVIDENCE.   Upon a
prosecution for homicide, evidence that the defendant had never
before been arrested or accused is inadmissible to establish his gen-
eral reputation for peace and quiet.

HOMICIDE—INTENT—EVIDENCE—OFFER OF PROOF.   Upon a prosecu-
tion for a homicide by the rigging of a spring gun, defendant's
offer to prove that he did not intend to kill the deceased is inad-
missible, since any intent was necessarily general and would not be
disproved by intent as to any particular person.

[1]Reported in 92 Pac. 939.

Appeal from a judgment of the superior court for King county, Frater, J., entered February 2, 1907, upon a trial and conviction of the crime of murder in the second degree. Reversed.

*Joseph M. Glasgow,* for appellant.

*Kenneth Mackintosh* and *George F. Vanderveer,* for respondent.

Rudkin, J.—The appellant was convicted of the crime of murder in the second degree, and prosecutes this appeal from the judgment rendered against him.

The facts, so far as deemed material to a proper understanding of the questions presented for decision, are as follows:  For some time prior to the 4th day of September, 1906, the appellant occupied a room in a lodging house, of which the deceased was proprietress, in the city of Seattle. In this room he kept a trunk which contained a concertino and some articles of personal property of small value. A spring gun was so arranged or rigged within the trunk that it would be discharged into the body of any person who might attempt to open it.  On the above date the deceased and another woman entered the appellant's room, during his absence therefrom, for the purpose of making the bed.  While in the room the ·deceased found the key to the trunk and proceeded to open it. In so doing she was evidently inspired by curiosity only.  As she opened the trunk the gun was discharged and the ball entered her breast, causing almost instant death.  The appellant has assigned a great many errors in support of his appeal, but many of these assignments present the same general question, arising in a different form or at a different stage of the proceedings, and we will not attempt to discuss the several assignments in detail.  The appellant propounded substantially the following question to a number of the jurors on their *voir dire* examination:

"If it should appear here in evidence that the defendant put a spring gun, or gun so rigged that it would be discharged in the opening of a trunk, this trunk which he kept in his room, and that some one was killed by opening the trunk, going into the trunk, would that fact create in your mind any prejudice or bias against the defendant that would make it so that you could not sit as a fair and impartial juror in this case?"

To this and other questions of like import, an objection was interposed and sustained. The question would seem entirely proper, and why the objection was sustained we are not advised. Certainly every litigant has a right to have his cause tried before a jury composed of men who have no undue bias or prejudice against him, his cause, or his defense. 24 Cyc. 280. In *Naylor v. Metropolitan St. R. Co.*, 66 Kan. 407, 71 Pac. 835, one of the jurors stated on his *voir dire* examination that he was prejudiced against the case of a nonresident who prosecuted an action for damages in the state of Kansas, when such action might have been prosecuted by the plaintiff in his own state. In reversing the judgment for error in denying a challenge for cause, the court said:

"It cannot be doubted that plaintiff has the constitutional right to have his cause tried by a jury in the courts of this state. He also has the right to have the jury empaneled to try his cause composed of men whose minds are unbiased and unprejudiced against either himself or his cause of action. Against the theory of the present jury system there may be plausible argument made, but against the practice in all courts of requiring an unprejudiced jury in the trial of jury cases no argument can be made. In this all the authorities agree."

We know from experience that men frequently entertain a prejudice against particular actions or particular defenses, and such prejudice if strong enough will of necessity disqualify them for jury service in such cases. We do not say that an affirmative answer to the question propounded would necessarily disqualify the jurors, but the appellant had an un-

questionable right to inquire into the state of their minds in order that he might challenge for cause, or intelligently exercise his right of peremptory challenge.

In his examinations of jurors, the attorney for the state propounded the following question:

"If the court should instruct you that a man has no right to kill another person either directly, as by shooting him with a gun held in his hand, or indirectly, as by setting a spring gun for him, except when necessary to prevent the commission of a capital crime—a crime punishable by death—would you be willing to accept that as the law of this case and be guided and governed by that instruction?"

The court overruled an objection interposed to this question and expressly approved the rule of law embodied therein. The ruling of the court in this regard finds support in the decision of this court in *State v. Barr*, 11 Wash. 481, 39 Pac. 1080, 48 Am. St. 890, 29 L. R. A. 154, but the rule there announced finds little support in the authorities generally, and none whatever in the common law. In *State v. Moore*, 31 Conn. 479, the court said:

"The class of crimes in prevention of which a man may, if necessary, exercise his natural right to repel force by force to the taking of the life of the aggressor, are *felonies* which are committed by *violence and surprise*; such as murder, robbery, burglary, arson, breaking a house in the day time *with intent to rob*, sodomy, and rape. Blackstone says: 'Such homicide as is committed for the *prevention* of any forcible and atrocious crime is justifiable by the law of nature; and also by the law of England as it stood as early as the time of Brackton;' and he specifies, as of that character, those which we have enumerated. No others were specified by Hale or Hawkins, who wrote before him on the Pleas of the Crown, or have been specified by any writer since. Mr. East, in his Pleas of the Crown, and Mr. Foster, from whom Judge Swift quotes the law on this subject in his Digest (vol. 2, p. 283), states the rule thus: 'A man may repel force by force in defense of his person, habitation, or property against one who manifestly intends or endeavors by violence and *surprise* to commit a known felony, such as murder, rape, robbery, arson,

burglary, and the like, upon either. In these cases he is not obliged to retreat, but may pursue his adversary until he has secured himself from all danger, and if he kill him in so doing it will be justifiable self defense:' I East P. C. 271; Foster's Crown Law, 259. Neither of these writers specify any other crimes than those enumerated, and both except from the list simple theft, and even an attempt to pick a pocket."

With the rule thus announced, substantially all the authorities are in accord. 21 Cyc. 798; Wharton, Homicide (3d ed.), p. 763; 1 Bish. Crim. Law, § 849. In the *Barr* case the court assumed that the reason for the common law rule is found in the fact that all the felonies above enumerated were punishable by death. We apprehend, however, that the true reason for the rule is stated by the court in *United States v. Gilliam*, Fed. Cas. No. 15,205a:

"The law is that a man may oppose force with force in defense of his person, his family or property against one who manifestly endeavors by violence to commit a felony, as murder, robbery, rape, arson or burglary.' *In all these felonies, from their atrocity and violence, human life either is, or is presumed to be in peril.*"

Of course the converse of the rule is equally well established and a person has no right to take human life directly or indirectly to prevent a mere trespass or a theft of property. In his opening statement to the jury, the attorney for the state said:

"I think in the course of this case in the securing of the jury you have already perhaps learned pretty much all about this case. It is a serious case, as all murder cases are, and it may surprise you somewhat that I should claim that it or any other murder case could ever be a simple case. But it is my opinion, gentlemen, that there will be practically no question in this case for you to decide; that the only question in this case is a question of law which the court will decide for you, and you, gentlemen, have all told me that you would, and have taken an oath that you would, accept his decision. . . . It is the theory of the state, and we will ask the court to instruct accordingly, and we believe that the court will in-

struct you acccordingly, that a man has no right,—that a
man is guilty of murder in the second degree when he sets a
trap gun or spring gun loaded with powder and ball and
arranged in such a way that it will be discharged by any per-
son who opens a trunk, for instance."

The court overruled an objection interposed to this state-
ment, thereby giving at least its implied sanction to the views
expressed by the prosecuting officer.   The state again main-
tains that this statement of its attorney is in accordance with
the decision of this court in *State v. Barr, supra.*   Such is not
the case.   In the *Barr* case the defendant contended for one
extreme view, viz., that he had a lawful right to maintain a
spring gun for the protection of his property, and that the
court should have so charged the jury.   In this case the state
goes to the other extreme, and contends not only that the ap
pellant had no such right, but that he is guilty of the crime of
murder in the second degree because a homicide resulted from
his act in so doing.   No such rule of law was announced in
the *Barr* case.   It was there expressly ruled that the claim of
the defendant, under the circumstances, presented a mixed
question of law and fact.   The court did intimate that: "The
court might have been justified in holding that the defendant
did that which he had no right to do;" but even that state-
ment falls far short of a declaration that the defendant would
be guilty of the crime of murder in the second degree.   The
latter crime in this state includes the elements of both malice
and intent, and these under any and all circumstances are
questions of fact to be determined by the jury.   The court in
such cases should instruct when a defendant may and when
he may not take human life in defense of person or property,
and allow the jury to apply the law to the facts as they may
find them.   The court correctly ruled that the appellant had
no greater right to take the life of the deceased by indirect
means than he would have had to take it by direct means
under the same circumstances, if personally present.   *State
v. Moore* and *United States v. Gilliam, supra;* 21 Cyc. 831.

The appellant offered to prove that he had warned the deceased in relation to this gun, but the testimony was rejected and the nature of the notice or warning given does not appear in the record.    Such warning or notice would not constitute a defense, unless it were brought home to the deceased in such a manner that her act in opening the trunk was a deliberate attempt on her part to take her own life.    But, if the appellant warned or notified the only person who had a lawful right to go to his room, the testimony might have a material bearing on the question of malice and should have been received on that issue.

The appellant offered to prove, by his own testimony, that he had never before been arrested for or accused of crime, but the offer was rejected.    If the appellant was unable to prove his general reputation for peace and quiet in the usual way, because of his short residence in the community, that was his misfortune and cannot change the rules of evidence.    If it was competent for him to prove that he had never been arrested or accused, it would be equally competent for the state to prove that he had been, and such testimony would violate every right of the accused.

The appellant further offered to prove that he did not intend to kill the deceased.    It is always competent for a person accused of crime to give testimony as to his intentions, where the question of intent is involved in the charge against him, but in this particular case the intent was necessarily general until it was made specific by the killing of the deceased, and in such cases the testimony as to the intent should be equally general.    To prove that he did not intend to kill a particular person, under the circumstances of this case, would tend to confuse rather than enlighten the jury, and the offer was properly rejected.

This opinion has already reached an inordinate length, but we think that the foregoing discussion disposes of all questions that are likely to arise on a retrial.    The use of spring guns in defense of property is not to be encouraged or commended,

but when a person is so unfortunate as to cause the death of another through such an agency he is entitled to a fair and impartial trial under proper declarations of the law, and to that end the judgment of the court below is reversed.

HADLEY, C. J., FULLERTON, MOUNT, and CROW, JJ., concur.

DUNBAR and ROOT, JJ., took no part.