No. 13,118.

STARKEY ET AL. *v.* DAMERON.
(21 P. [2d] 1112)

Decided March 27, 1933. Rehearing denied May 8, 1933, second petition for rehearing denied May 29, 1933.

Mr. FANCHER SARCHET, for plaintiffs in error.

Messrs. RINN & CONNELL, for defendant in error.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

Plaintiffs in error are husband and wife and are hereinafter referred to as defendants, or as Mr. and Mrs. Starkey. Defendant in error, James Dameron, is hereinafter referred to as plaintiff.

Plaintiff, seventeen years of age, brought this action against defendants for injuries received by the discharge of a spring gun concealed in an automatic gasoline pump at a filling station alleged to have been operated by defendants. His prayer was for $5,000 compensatory damages, $2,000 exemplary damages, and for body execution. The verdict was against both defendants, for $100 compensatory and $2,000 exemplary damages, and a joint and several judgment was entered accordingly. Body execution was issued against Mrs. Starkey, fixing her term of imprisonment at thirty days, and against Mr. Starkey, fixing his term at six months. To review that judgment defendants prosecute this writ. Mrs. Starkey moved for a stay of execution "until the final determination of said cause." Mr. Starkey made no such motion; and neither applied for a supersedeas. On said motion for stay of execution a supersedeas was, however, ordered as to Mrs. Starkey by consent of counsel. Mr. Starkey is presumably in jail.

That the filling station in question was operated by Mr. Starkey, that he set the spring gun, and that plaintiff was injured, are undisputed. Mrs. Starkey contends that she was not interested in the station and was not a party to the installation and maintenance of the device. Mr. Starkey maintained that he was justified in setting the spring gun because of repeated thefts of gasoline from the station; that he set it only as a protection against theft, and that plaintiff was injured while trying to steal gasoline. Plaintiff's position on this subject is that the automatic device was out of order, that he had no intention to steal; that he deposited his money and

got no gasoline; and that he was injured in attempting to ascertain why, or to recover his deposit.

On the question of Mrs. Starkey's interest in the station and responsibility for the spring gun, the most that can be said is that the evidence was conflicting; and under a well established rule we are bound by the judgment.

Instruction No. 2 given by the court reads: "You are instructed that in this case the defendant, Lewis P. Starkey, is liable to respond in damages to the plaintiff for any injuries sustained in consequence of his being shot by a spring gun in the automatic pump in question, and the questions for you to determine are, the amount of damages to which plaintiff is entitled, whether or not defendant, Rose E. Starkey, is also liable, whether or not exemplary damages should be awarded against either or both defendants, and whether or not plaintiff is entitled to a body execution against either or both of the defendants." This instruction was objected to, and exception saved, and its giving assigned as error.

Said instruction No. 2 made imperative a judgment in some amount for plaintiff and rendered immaterial, evidence that plaintiff was injured in an attempt to perpetrate a crime. Defendants insist that this spring gun was a lawful device for the protection of a dwelling house against a burglar; that the same rule applies to a place of business and hence applied to this filling station, relying upon 2 R. C. L., p. 555, §35, and 45 C. J., p. 751, §149. Accepting this rule as there laid down it would be necessary to extend it to make it applicable to this automatic gasoline pump standing out of doors. We think the better rule is this: "The principle does not apply to the thief who secretly steals your purse or other personal property in your fields or in buildings not within the privilege of the domicile. * * * The setting of spring-guns, therefore, in open fields or outhouses, not within the privilege of the domicile, without notice, would not justify or excuse the homicide which might ensue, but the

party setting them would be criminally responsible for the consequences of his act." *United States v. Gilliam,* 25 Fed. Cas. No. 15205a, p. 1319; *State v. Marfaudille,* 48 Wash. 117, 92 Pac. 939, 15 Ann. Cas. 584. It should be observed that while the actual intent of this spring gun was only to protect against theft, the dire consequences incurred by a felon might also be incurred by one innocently attempting to recover money deposited for which no gas was delivered.

■ ■ It will be observed that plaintiff's demand was for exemplary damages in the sum of two-fifths his demand for compensatory damages, whereas the jury found him actually damaged in the rather trivial sum of $100 and awarded him exemplary damages in twenty times that amount. True, exemplary damages cannot be accurately measured and are usually discretionary with the jury. Ordinarily they should bear some relation to the compensatory damages awarded and the evil intent or wantonness exhibited toward the particular person injured. Since defendants are not shown to have set the gun with this plaintiff in mind, or with any other purpose in view than protection to their property, this judgment can only be sustained on the theory of "a wanton and reckless disregard" of the rights of all persons who for any reason might tamper with the pump. C. L. 1921, p. 1646, §6307. These things should be taken into consideration in reviewing this extraordinary award. Unreasonable exemplary damages, such as here awarded, will not be sustained, because the punishment "is not commensurate with the injury done." *Page v. Yool,* 28 Colo. 464, 65 Pac. 636.

We think, under the circumstances, that exemplary damages in this case should not exceed the actual damages.

It should be further noted that evidence that, at the time plaintiff was injured, he was or was not attempting to secure gasoline without paying for it, should any such

be offered, is proper to go to the jury as bearing upon the question of exemplary damages.

The judgment is reversed and the cause remanded for a new trial.

MR. JUSTICE BUTLER, concurring.

I concur in the result. The statute permits the award of only reasonable exemplary damages. C. L. §6307. In view of the evidence, the amount of exemplary damages is unreasonable and indicates that the jury arrived at the amount through passion or prejudice.

With the statement in the majority opinion that exemplary damages in this case should not exceed the actual damages, I am unable to agree. The two kinds of damages are based upon wholly different considerations. Actual damages are to compensate the plaintiff for the injury sustained. Exemplary damages, sometimes called punitive, or vindictive, damages, or smart money, are considered as being in the nature of punishment and as a warning to deter the defendant and others from committing like offenses in the future. 8 R. C. L., p. 581. And in fixing the amount of exemplary damages, the jury may take into consideration the defendant's financial condition, since the allowance of a given sum may be a less punishment to one man than to another. Id.; *McAllister v. McAllister,* 72 Colo. 28, 209 Pac. 788; *Courvoisier v. Raymond,* 23 Colo. 113, 47 Pac. 284. In some cases the facts may justify the recovery of only a small amount of actual damages, but may show such a degree of fraud, malice or insult, or such a wanton or reckless disregard of the plaintiff's rights and feelings as to call for exemplary damages in a very substantial amount. In *McConathy v. Deck,* 34 Colo. 461, 83 Pac. 135, where there was some evidence of actual damages, but none were found by the trial court, we sustained a judgment for exemplary damages in the sum of $500. In the opinion we cited with approval *Favorite v. Cottrill,* 62 Mo. App. 119,

in which a judgment for $1 compensatory damages and $2,499 exemplary damages was sustained.

In the present case the amount awarded as actual damages, referred to in the principal opinion as a "rather trivial sum," should not be used as a yardstick with which to measure the amount recoverable as exemplary damages. The statement in the majority opinion may be understood by the trial court as an intimation that it should be so used at the next trial. If this is what is intended by the statement, it does not agree with my idea of the law; if that is not the intention, the language, it seems to me, is unfortunate.

Mr. Justice Bouck concurs in the views herein expressed.