**Marvin KATKO, Appellee,**

v.

**Edward BRINEY and Bertha L. Briney,
Appellants.**

**No. 54169.**

Supreme Court of Iowa.

Feb. 9, 1971.

Bruce Palmer and H. S. Life, Oskaloosa, for appellants.

Garold Heslinga, Oskaloosa, for appellee.

MOORE, Chief Justice.

The primary issue presented here is whether an owner may protect personal property in an unoccupied boarded-up farm house against trespassers and thieves by a spring gun capable of inflicting death or serious injury.

We are not here concerned with a man's right to protect his home and members of his family. Defendants' home was several miles from the scene of the incident to which we refer infra.

Plaintiff's action is for damages resulting from serious injury caused by a shot from a 20-gauge spring shotgun set by defendants in a bedroom of an old farm house which had been uninhabited for several years. Plaintiff and his companion, Marvin McDonough, had broken and entered the house to find and steal old bottles and dated fruit jars which they considered antiques.

At defendants' request plaintiff's action was tried to a jury consisting of residents of the community where defendants' property was located. The jury returned a verdict for plaintiff and against defendants for $20,000 actual and $10,000 punitive damages.

After careful consideration of defendants' motions for judgment notwithstanding the verdict and for new trial, the experienced and capable trial judge overruled them and entered judgment on the verdict. Thus we have this appeal by defendants.

I. In this action our review of the record as made by the parties in the lower court is for the correction of errors at law. We do not review actions at law de novo. Rule 334, Rules of Civil Procedure. Findings of fact by the jury are binding upon this court if supported by substantial evidence. Rule 344(f), par. 1, R.C.P.

II. Most of the facts are not disputed. In 1957 defendant Bertha L. Briney inherited her parents' farm land in Mahaska and Monroe Counties. Included was an 80-acre tract in southwest Mahaska County where her grandparents and parents had lived. No one occupied the house thereafter. Her husband, Edward, attempted to care for the land. He kept no farm machinery thereon. The outbuildings became dilapidated.

For about 10 years, 1957 to 1967, there occurred a series of trespassing and housebreaking events with loss of some household items, the breaking of windows and "messing up of the property in general". The latest occurred June 8, 1967, prior to the event on July 16, 1967 herein involved.

Defendants through the years boarded up the windows and doors in an attempt to stop the intrusions. They had posted "no trespass" signs on the land several years before 1967. The nearest one was 35 feet from the house. On June 11, 1967 defendants set "a shotgun trap" in the north bedroom. After Mr. Briney cleaned and oiled his 20-gauge shotgun, the power of which he was well aware, defendants took it to the old house where they secured it to an iron bed with the barrel pointed at the bedroom door. It was rigged with wire from the doorknob to the gun's trigger so it would fire when the door was opened. Briney first pointed the gun so an intruder would be hit in the stomach but at Mrs Briney's suggestion it was lowered to hit the legs. He admitted he did so "because I was mad and tired of being tormented" but "he did not intend to injure anyone". He gave no explanation of why he used a loaded shell and set it to hit a person already in the house. Tin was nailed over the bedroom window. The spring gun could not be seen from the outside. No warning of its presence was posted.

Plaintiff lived with his wife and worked regularly as a gasoline station attendant in Eddyville, seven miles from the old house. He had observed it for several years while hunting in the area and considered it as being abandoned. He knew it had long been uninhabited. In 1967 the area around the house was covered with high weeds. Prior to July 16, 1967 plaintiff and McDonough had been to the premises and found several old bottles and fruit jars which they took and added to their collection of antiques. On the latter date about 9:30 p. m. they made a second trip to the Briney property. They entered the old house by removing a board from a porch window which was without glass. While McDonough was looking around the kitchen area plaintiff went to another part of the house. As he started to open the north bedroom door the shotgun went off striking him in the right leg above the ankle bone. Much of his leg, including part of the tibia, was blown away. Only by Mc-

Donough's assistance was plaintiff able to get out of the house and after crawling some distance was put in his vehicle and rushed to a doctor and then to a hospital. He remained in the hospital 40 days.

Plaintiff's doctor testified he seriously considered amputation but eventually the healing process was successful. Some weeks after his release from the hospital plaintiff returned to work on crutches. He was required to keep the injured leg in a cast for approximately a year and wear a special brace for another year. He continued to suffer pain during this period.

There was undenied medical testimony plaintiff had a permanent deformity, a loss of tissue, and a shortening of the leg.

The record discloses plaintiff to trial time had incurred $710 medical expense, $2056.85 for hospital service, $61.80 for orthopedic service and $750 as loss of earnings. In addition thereto the trial court submitted to the jury the question of damages for pain and suffering and for future disability.

 III. Plaintiff testified he knew he had no right to break and enter the house with intent to steal bottles and fruit jars therefrom. He further testified he had entered a plea of guilty to larceny in the nighttime of property of less than $20 value from a private building. He stated he had been fined $50 and costs and paroled during good behavior from a 60-day jail sentence. Other than minor traffic charges this was plaintiff's first brush with the law. On this civil case appeal it is not our prerogative to review the disposition made of the criminal charge against him.

IV. The main thrust of defendants' defense in the trial court and on this appeal is that "the law permits use of a spring gun in a dwelling or warehouse for the purpose of preventing the unlawful entry of a burglar or thief". They repeated this contention in their exceptions to the trial court's instructions 2, 5 and 6. They took no exception to the trial court's statement of the issues or to other instructions.

In the statement of issues the trial court stated plaintiff and his companion committed a felony when they broke and entered defendants' house. In instruction 2 the court referred to the early case history of the use of spring guns and stated under the law their use was prohibited except to prevent the commission of felonies of violence and where human life is in danger. The instruction included a statement breaking and entering is not a felony of violence.

Instruction 5 stated: "You are hereby instructed that one may use reasonable force in the protection of his property, but such right is subject to the qualification that one may not use such means of force as will take human life or inflict great bodily injury. Such is the rule even though the injured party is a trespasser and is in violation of the law himself."

Instruction 6 stated: "An owner of premises is prohibited from willfully or intentionally injuring a trespasser by means of force that either takes life or inflicts great bodily injury; and therefore a person owning a premise is prohibited from setting out 'spring guns' and like dangerous devices which will likely take life or inflict great bodily injury, for the purpose of harming trespassers. The fact that the trespasser may be acting in violation of the law does not change the rule. The only time when such conduct of setting a 'spring gun' or a like dangerous device is justified would be when the trespasser was committing a felony of violence or a felony punishable by death, or where the trespasser was endangering human life by his act."

Instruction 7, to which defendants made no objection or exception, stated: "To entitle the plaintiff to recover for compensatory damages, the burden of proof is upon him to establish by a preponderance of the evidence each and all of the following propositions:

"1. That defendants erected a shotgun trap in a vacant house on land owned by de-

fendant, Bertha L. Briney, on or about June 11, 1967, which fact was known only by them, to protect household goods from trespassers and thieves.

"2. That the force used by defendants was in excess of that force reasonably necessary and which persons are entitled to use in the protection of their property.

"3. That plaintiff was injured and damaged and the amount thereof.

"4. That plaintiff's injuries and damages resulted directly from the discharge of the shotgun trap which was set and used by defendants."

The overwhelming weight of authority, both textbook and case law, supports the trial court's statement of the applicable principles of law.

Prosser on Torts, Third Edition, pages 116–118, states:

" * * * the law has always placed a higher value upon human safety than upon mere rights in property, it is the accepted rule that there is no privilege to use any force calculated to cause death or serious bodily injury to repel the threat to land or chattels, unless there is also such a threat to the defendant's personal safety as to justify a self-defense. * * * spring guns and other man-killing devices are not justifiable against a mere trespasser, or even a petty thief. They are privileged only against those upon whom the landowner, if he were present in person would be free to inflict injury of the same kind."

Restatement of Torts, section 85, page 180, states: "The value of human life and limb, not only to the individual concerned but also to society, so outweighs the interest of a possessor of land in excluding from it those whom he is not willing to admit thereto that a possessor of land has, as is stated in § 79, no privilege to use force intended or likely to cause death or serious harm against another whom the possessor sees about to enter his premises or meddle

with his chattel, unless the intrusion threatens death or serious bodily harm to the occupiers or users of the premises. * * * A posessor of land cannot do indirectly and by a mechanical device that which, were he present, he could not do immediately and in person. Therefore, he cannot gain a privilege to install, for the purpose of protecting his land from intrusions harmless to the lives and limbs of the occupiers or users of it, a mechanical device whose only purpose is to inflict death or serious harm upon such as may intrude, by giving notice of his intention to inflict, by mechanical means and indirectly, harm which he could not, even after request, inflict directly were he present."

In Volume 2, Harper and James, The Law of Torts, section 27.3, pages 1440, 1441, this is found: "The possessor of land may not arrange his premises intentionally so as to cause death or serious bodily harm to a trespasser. The possessor may of course take some steps to repel a trespass. If he is present he may use force to do so, but only that amount which is reasonably necessary to effect the repulse. Moreover if the trespass threatens harm to property only—even a theft of property—the possessor would not be privileged to use deadly force, he may not arrange his premises so that such force will be inflicted by mechanical means. If he does, he will be liable even to a thief who is injured by such device."

Similar statements are found in 38 Am. Jur., Negligence, section 114, pages 776, 777, and 65 C.J.S. Negligence § 62(23), pages 678, 679; Anno. 44 A.L.R.2d 383, entitled "Trap to protect property".

In Hooker v. Miller, 37 Iowa 613, we held defendant vineyard owner liable for damages resulting from a spring gun shot although plaintiff was a trespasser and there to steal grapes. At pages 614, 615, this statement is made: "This court has held that a mere trespass against property other than a dwelling is not a sufficient justification to authorize the use of a dead-

ly weapon by the owner in its defense; and that if death results in such a case it will be murder, though the killing be actually necessary to prevent the trespass. The State v. Vance, 17 Iowa 138." At page 617 this court said: "[T]respassers and other inconsiderable violators of the law are not to be visited by barbarous punishments or prevented by inhuman inflictions of bodily injuries."

The facts in Allison v. Fiscus, 156 Ohio 120, 100 N.E.2d 237, 44 A.L.R.2d 369, decided in 1951, are very similar to the case at bar. There plaintiff's right to damages was recognized for injuries received when he feloniously broke a door latch and started to enter defendant's warehouse with intent to steal. As he entered a trap of two sticks of dynamite buried under the doorway by defendant owner was set off and plaintiff seriously injured. The court held the question whether a particular trap was justified as a use of reasonable and necessary force against a trespasser engaged in the commission of a felony should have been submitted to the jury. The Ohio Supreme Court recognized plaintiff's right to recover punitive or exemplary damages in addition to compensatory damages.

In Starkey v. Dameron, 96 Colo. 459, 45 P.2d 172, plaintiff was allowed to recover compensatory and punitive damages for injuries received from a spring gun which defendant filling station operator had concealed in an automatic gasoline pump as protection against thieves.

In Wilder v. Gardner, 39 Ga.App. 608, 147 S.E. 911, judgment for plaintiff for injuries received from a spring gun which defendant had set, the court said: "A person in control of premises may be responsible even to a trespasser for injuries caused by pitfalls, mantraps, or other like contrivances so dangerous in character as to imply a disregard of consequences or a willingness to inflict injury."

In Phelps v. Hamlett, Tex.Civ.App., 207 S.W. 425, defendant rigged a bomb inside his outdoor theater so that if anyone came through the door the bomb would explode. The court reversed plaintiff's recovery because of an incorrect instruction but at page 426 said: "While the law authorizes an owner to protect his property by such reasonable means as he may find to be necessary, yet considerations of humanity preclude him from setting out, even on his own property, traps and devices dangerous to the life and limb of those whose appearance and presence may be reasonably anticipated, even though they may be trespassers."

In United Zinc & Chemical Co. v. Britt, 258 U.S. 268, 275, 42 S.Ct. 299, 66 L.Ed. 615, 617, the court states: "The liability for spring guns and mantraps arises from the fact that the defendant has * * * expected the trespasser and prepared an injury that is no more justified than if he had held the gun and fired it."

In addition to civil liability many jurisdictions hold a land owner criminally liable for serious injuries or homicide caused by spring guns or other set devices. See State v. Childers, 133 Ohio 508, 14 N.E.2d 767 (melon thief shot by spring gun); Pierce v. Commonwealth, 135 Va. 635, 115 S.E. 686 (policeman killed by spring gun when he opened unlocked front door of defendant's shoe repair shop); State v. Marfaudille, 48 Wash. 117, 92 P. 939 (murder conviction for death from spring gun set in a trunk); State v. Beckham, 306 Mo. 566, 267 S.W. 817 (boy killed by spring gun attached to window of defendant's chili stand); State v. Green, 118 S.C. 279, 110 S.E. 145, 19 A.L.R. 1431 (intruder shot by spring gun when he broke and entered vacant house. Manslaughter conviction of owner-affirmed); State v. Barr, 11 Wash. 481, 39 P. 1080 (murder conviction affirmed for death of an intruder into a boarded up cabin in which owner had set a spring gun).

In Wisconsin, Oregon and England the use of spring guns and similar devices is specifically made unlawful by statute. 44 A.L.R., section 3, pages 386, 388.

The legal principles stated by the trial court in instructions 2, 5 and 6 are well established and supported by the authorities cited and quoted supra. There is no merit in defendants' objections and exceptions thereto. Defendants' various motions based on the same reasons stated in exceptions to instructions were properly overruled.

V. Plaintiff's claim and the jury's allowance of punitive damages, under the trial court's instructions relating thereto, were not at any time or in any manner challenged by defendants in the trial court as not allowable. We therefore are not presented with the problem of whether the $10,000 award should be allowed to stand.

We express no opinion as to whether punitive damages are allowable in this type of case. If defendants' attorneys wanted that issue decided it was their duty to raise it in the trial court.

The rule is well established that we will not consider a contention not raised in the trial court. In other words we are a court of review and will not consider a contention raised for the first time in this court. Ke-Wash Company v. Stauffer Chemical Company, Iowa, 177 N.W.2d 5, 9; In re Adoption of Moriarty, 260 Iowa 1279, 1288, 152 N.W.2d 218, 223; Verschoor v. Miller, 259 Iowa 170, 176, 143 N.W.2d 385, 389; Mundy v. Olds, 254 Iowa 1095, 1100, 120 N.W.2d 469, 472; Bryan v. Iowa State Highway Commission, 251 Iowa 1093, 1096, 104 N.W.2d 562, 563, and citations.

In our most recent reference to the rule we say in Cole v. City of Osceola, Iowa, 179 N.W.2d 524, 527: "Of course, questions not presented to and not passed upon by the trial court cannot be raised or reviewed on appeal."

Under our law punitive damages are not allowed as a matter of right. Sebastian v. Wood, 246 Iowa 94, 100, 101, 66 N.W.2d 841, 844. When malice is shown or when a defendant acted with wanton and reckless disregard of the rights of others, punitive damages may be allowed as punishment to the defendant and as a deterrent to others. Although not meant to compensate a plaintiff, the result is to increase his recovery. He is the fortuitous beneficiary of such an award simply because there is no one else to receive it.

The jury's findings of fact including a finding defendants acted with malice and with wanton and reckless disregard, as required for an allowance of punitive or exemplary damages, are supported by substantial evidence. We are bound thereby.

This opinion is not to be taken or construed as authority that the allowance of punitive damages is or is not proper under circumstances such as exist here. We hold only that question of law not having been properly raised cannot in this case be resolved.

Study and careful consideration of defendants' contentions on appeal reveal no reversible error.

Affirmed.

All Justices concur except LARSON, J., who dissents.

LARSON, Justice.

I respectfully dissent, first, because the majority wrongfully assumes that by installing a spring gun in the bedroom of their unoccupied house the defendants intended to shoot any intruder who attempted to enter the room. Under the record presented here, that was a fact question. Unless it is held that these property owners are liable for any injury to a intruder from such a device regardless of the intent with which it is installed, liability under these pleadings must rest upon two definite issues of fact, i. e., did the defendants intend to shoot the invader, and if so, did they employ unnecessary and unreasonable force against him?

It is my feeling that the majority oversimplifies the impact of this case on the law, not only in this but other jurisdictions,

and that it has not thought through all the ramifications of this holding.

There being no statutory provisions governing the right of an owner to defend his property by the use of a spring gun or other like device, or of a criminal invader to recover punitive damages when injured by such an instrumentality while breaking into the building of another, our interest and attention are directed to what should be the court determination of public policy in these matters. On both issues we are faced with a case of first impression. We should accept the task and clearly establish the law in this jurisdiction hereafter. I would hold there is no absolute liability for injury to a criminal intruder by setting up such a device on his property, and unless done with an intent to kill or seriously injure the intruder, I would absolve the owner from liability other than for negligence. I would also hold the court had no jurisdiction to allow punitive damages when the intruder was engaged in a serious criminal offense such as breaking and entering with intent to steal.

It appears to me that the learned trial court was and the majority is now confused as to the basis of liability under the circumstances revealed. Certainly, the trial court's instructions did nothing to clarify the law in this jurisdiction for the jury. Timely objections to Instructions Nos. 2, 5 and 6 were made by the defendants, and thereafter the court should have been aware of the questions of liability left unresolved, i. e., whether in this jurisdiction we by judicial declaration bar the use in an unoccupied building of spring guns or other devices capable of inflicting serious injury or death on an intruder regardless of the intent with which they are installed, or whether such an intent is a vital element which must be proven in order to establish liability for an injury inflicted upon a criminal invader.

Although the court told the jury the plaintiff had the burden to prove "That the force used by defendants was in excess of that force reasonably necessary and which persons are entitled to use in the protection of their property", it utterly failed to tell the jury it could find the installation was not made with the intent or purpose of striking or injuring the plaintiff. There was considerable evidence to that effect. As I shall point out, both defendants stated the installation was made for the purpose of scaring or frightening away any intruder, not to seriously injure him. It may be that the evidence would support a finding of an intent to injure the intruder, but obviously that important issue was never adequately or clearly submitted to the jury.

Unless, then, we hold for the first time that liability for death or injury in such cases is absolute, the matter should be remanded for a jury determination of defendant's intent in installing the device under instructions usually given to a jury on the issue of intent.

I personally have no objection to this court's determination of the public policy of this state in such a case to ban the use of such devices in *all* instances where there is no intruder threat to human life or safety, but I do say we have never done so except in the case of a mere trespasser in a vineyard. Hooker v. Miller, 37 Iowa 613 (1873). To that extent, then, this is a case of first impression, and in any opinion we should make the law in this jurisdiction crystal clear. Although the legislature could pronounce this policy, as it has in some states, since we have entered this area of the law by the Hooker decision, I believe it proper for us to declare the applicable law in cases such as this for the guidance of the bench and bar hereafter. The majority opinion utterly fails in this regard. It fails to recognize the problem where such a device is installed in a building housing valuable property to ward off criminal intruders, and to clearly place the burden necessary to establish liability.

My second reason for this dissent is the allowance of an award of punitive damages herein. Plaintiff claimed a remedy which

our law does not allow, and the trial court should not have submitted that issue to the jury. Like the law establishing liability for installing a spring gun or other similar device, the law recognizing and allowing punitive or exemplary damages is court-made law, not statutory law. As to the property owner's liability for exemplary damages where one is engaged in a serious criminal offense at the time of his injury, we also have a case of first impression. We have never extended this right to such a claimant, and I would not do so now. Unless we do, or there is a compelling reason or authority for such a right, which I fail to find, the trial court erred in submitting that issue to the jury. Like the case where a judgment is entered without jurisdiction of the subject matter, I would hold the award of $10,000 to plaintiff is void.

I do not wish to criticize, but believe the factual statement of the majority fails to give a true perspective of the relative facts and issues to be considered.

Plaintiff's petition at law asking damages alleged willful and malicious setting of a trap or device for the purpose of killing or inflicting great bodily harm upon any trespasser on defendants' property. We are, therefore, factually concerned with how such force may be properly applied by the property owner and whether his intent is relevant to liability. Negligent installation of a dangerous device to frighten and ward off an intruder or thief is not alleged, so unless the proof submitted was sufficient to establish a willful setting of the trap with a purpose of killing or seriously injuring the intruder, no recovery could be had. If the evidence submitted was such that a jury could find defendants had willfully set the spring gun with a purpose to seriously injure the plaintiff intruder, unless they were privileged under the law to set the gun under these circumstances, liability for the injury would follow.

From the record we learn that plaintiff and a companion made a second trip to a furnished but uninhabited house on defend-

ants' farmland in Mahaska County on the night of July 16, 1967. They tore a plank from a porch window, entered the house with an intent to steal articles therein, and in search of desired articles plaintiff came to a closed bedroom door where he removed a chair braced under the door knob and pulled the door toward him. This action triggered a single shot 20-gauge shotgun which defendants had wired to the bottom of a bed. The blast went through the door and struck plaintiff two or three inches above the right ankle.

The Mahaska County Grand Jury issued a true bill charging plaintiff with breaking and entering in the nighttime, but the county attorney accepted a plea of guilty to the lesser offense of larceny in the nighttime of property of a value of less than $20 and did not press the greater charge.

At the trial of this case Mr. Briney, one of the defendants, testified that the house where plaintiff was injured had been the home of Mrs. Briney's parents. He said the furniture and other possessions left there were of considerable value and they had tried to preserve them and enjoy them for frequent visits by Mrs. Briney. It appeared this unoccupied house had been broken into repeatedly during the past ten years and, as a result, Mr. Briney said "things were pretty well torn up, a lot of things taken." To prevent these intrusions the Brineys nailed the doors and some windows shut and boarded up others. Prior to this time Mr. Briney testified he had locked the doors, posted seven no trespassing signs on the premises, and complained to the sheriffs of two counties on numerous occasions. Mr. Briney further testified that when all these efforts were futile and the vandalism continued, he placed a 20-guage shotgun in a bedroom and wired it so that it would shoot downward and toward the door if anyone opened it. He said he first aimed it straight at the door but later, at his wife's suggestion, reconsidered the aim and pointed the gun down in a way he thought would only scare

someone if it were discharged. On cross-examination he admitted that he did not want anyone to know it was there in order to preserve the element of surprise.

Plaintiff testified he knew the house was unoccupied and admitted breaking into it in the nighttime without lawful reason or excuse. He claimed he and his companion were seeking old bottles and dated fruit jars. He also admitted breaking in on one prior occasion and stated the reason for the return visit was that "we decided we would go out to this place again and see if there was something we missed while we was out there the first time." An old organ fascinated plaintiff. Arriving this second time, they found that the window by which they had entered before was now a "solid mass of boards" and walked around the house until they found the porch window which offered less resistance. Plaintiff said they crawled through this window. While searching the house he came to the bedroom door and pulled it open, thus triggering the gun that delivered a charge which struck him in the leg.

Plaintiff's doctor testified that he treated the shotgun wound on the night it was sustained and for some period thereafter. The healing process was successful and plaintiff was released after 40 days in the hospital. There was medical testimony that plaintiff had a permanent deformity, a loss of tissue, and a shortening of the leg.

That plaintiff suffered a grievous wound is not denied, and that it constituted a serious bodily injury cannot be contradicted.

As previously indicated, this appeal presents two vital questions which are as novel as they are difficult. They are, (1) is the owner of a building in which are kept household furniture, appliances, and valuables, but not occupied by a person or persons, liable in damages to an intruder who in the nighttime broke into and entered the building with the intent to steal and was shot and seriously injured by a spring gun allegedly set by the owner to frighten intruders from his property, and (2) if he is liable for compensatory damages, is this a proper case for the allowance of exemplary or punitive damages?

The trial court overruled all objections to the instructions and denied defendants' motion for a new trial. Thus, the first question to be resolved is the status of the law in this jurisdiction as to the means of force a property owner is privileged to use to repel (1) a mere trespasser, (2) a criminal invader, thief or burglar, where he presents no threat to human life or safety, and (3) an intruder or criminal breaking and entering a dwelling which poses a threat to human life and safety. Overlooked by the majority is the vital problem relating to the relevancy and importance of the owner's intent in placing the device.

I have been unable to find a case exactly like the case at bar, although there have been many cases which consider liability to a mere trespasser for injuries incurred by a spring gun or other dangerous instruments set to protect against intrusion and theft. True, some of these cases seem to turn on the negligence of the party setting the trap and an absence of adequate warning thereof, but most of them involve an alleged intentional tort. It is also true some hold as a matter of public policy there is liability for any injury following the setting of a device which is intended to kill or inflict great bodily injury on one coming on the owner's property without permission, unless the invader poses a threat to human life, and this is so even though there is no statutory prohibition against the setting of spring guns in the jurisdiction.

Since our decision in Hooker v. Miller, supra, we have recognized in this state the doctrine that the owner of a premise is liable in damages to a mere trespasser coming upon his property for any injury occasioned by the unsafe condition of the property which the owner has intentionally permitted to exist, such as installed spring guns, unless adequate warning is given thereof. In

Hooker, which involved stealing grapes from a vineyard, we held a property owner had no right to resist such a trespass by means which may kill or inflict great bodily injury to the trespasser. But it does appear therein that we recognized some distinction between a mere trespass against property and a trespass involving a serious crime or involving a dwelling. Except when the trespass involves a serious crime, a crime posing a threat to human life, it may be argued that the law in this jurisdiction should limit the right of one to protect his property, that he does not have a privilege to resist a mere trespass by using a spring gun or other device which poses a threat to life.

However, left unsettled by this and other court pronouncements is the means which may be used to repel, prevent, or apprehend a trespasser engaged in a more serious criminal offense. True, there is a line of cases which seem to apply the same rule to all criminal trespasses except those involving arson, rape, assault, or other acts of violence against persons residing on the property invaded. State v. Vance, 17 Iowa 138 (1864); State v. Plumlee, 177 La. 687, 149 So. 425 (1933); Pierce v. Commonwealth, 135 Va. 635, 115 S.E. 686 (Virginia, 1923); Simpson v. State, 59 Ala. 1, 31 Am. Rep. 1 (1877); State v. Barr, 11 Wash. 481, 39 P. 1080 (1895); Starkey v. Dameron, 96 Colo. 459, 21 P.2d 1112 (1933); State v. Beckham, 306 Mo. 566, 267 S.W. 817 (1924); Bird v. Holbrook, 4 Bingham's Reports 628 (England, 1828). Also see annotation, 44 A.L.R.2d 391, § 5, and citations. There are others which at least infer that any serious law violation by the trespasser might permit the reasonable use of dangerous instrumentalities to repel the intruder and prevent loss or damage to one's valuable property. Scheuermann v. Scharfenberg, 163 Ala. 337, 50 So. 335; Marquis v. Benfer, Tex.Civ.App., 298 S.W.2d 601 (Texas 1956); Grant v. Hass, 31 Tex.Civ. App. 688, 75 S.W. 342 (1903); Gray v. Combs, 7 J.J. Marshall 478 (Ky., 1832), 23 Am.Dec. 431; Ilott v. Wilkes, 3 B. & A. 304 (1820 K.B.).

Also see the following articles on this subject: 68 Yale Law Journal 633, Duties to Trespassers: A Comparative Survey and Revaluation; 35 Yale Law Journal 525, The Privilege to Protect Property by Dangerous Barriers and Mechanical Devices; annotation, 44 A.L.R.2d 383, Use of Set Gun, Trap, or Similar Device on Defendant's Own Property.

Most of these discussions center around what should be public policy regarding a property owner's right to use a dangerous weapon or instrumentality to protect his premises from intruders or trespassers, and his duty to protect the trespasser from serious injury while upon his premises.

Some states, including Wisconsin, have statutes which announce the jurisdiction's public policy. Often they prohibit the use of spring guns or such devices to protect real and personal property, and of course in those instances a property owner, regardless of his intent or purpose, has no right to make use of them and is liable to anyone injured thereby. Since there has been no such statutory prohibition or direct judicial pronouncement to that effect prior to this time in this state, it could not be said as a matter of law that the mere placing of a spring gun in a building on one's premises is unlawful. Much depends upon its placement and purpose. Whether an owner exceeds his privilege to reasonably defend his property by such an installation, and whether liability is incurred in a given case, should therefore depend upon the circumstances revealed, the intent of the property owner, and his care in setting the device. In any event, I question whether it should be determined solely by the results of his act or its effect upon the intruder.

It appears there are cases and some authority which would relieve one setting a spring gun on his premises of any liability if adequate warning had been given an intruder and he ignores the warning. In all of these cases there is a question as to

the *intent* of the property owner in setting the device. Intent, of course, may be determined from both direct and indirect evidence, and it is true the physical facts may be and often are sufficient to present a jury issue. I think they were here, but no clear instruction was given in this regard.

If, after proper instructions, the finder of fact determines that the gun was set with an intent and purpose to kill or inflict great bodily injury on an intruder, then and only then may it be said liability is established unless the property so protected is shown to be an occupied dwelling house. Of course, under this concept, if the finder of fact determines the gun set in an unoccupied house was intended to do no more than to frighten the intruder or sting him a bit, no liability would be incurred under such pleadings as are now presented. If such a concept of the law were adopted in Iowa, we would have here a question for the fact-finder or jury as to whether the gun was willfully and intentionally set so as to seriously injure the thief or merely scare him away.

I feel the better rule is that an owner of buildings housing valuable property may employ the use of spring guns or other devices intended to repel but not seriously injure an intruder who enters his secured premises with or without a criminal intent, but I do not advocate its general use, for there may also be liability for negligent installation of such a device. What I mean to say is that under such circumstances as we have here the issue as to whether the set was with an intent to seriously injure or kill an intruder is a question of fact that should be left to the jury under proper instructions, and that the mere setting of such a device with a resultant serious injury should not as a matter of law establish liability.

In the case of a mere trespass able authorities have reasoned that absolute liability may rightfully be fixed on the landowner for injuries to the trespasser because very little damage could be inflicted upon the property owner and the danger is great that a child or other innocent trespasser might be seriously injured by the device. In such matters they say no privilege to set up the device should be recognized by the courts regardless of the owner's intent. I agree.

On the other hand, where the intruder may pose a danger to the inhabitants of a dwelling, the privilege of using such a device to repel has been recognized by most authorities, and the mere setting thereof in the dwelling has not been held to create liability for an injury as a matter of law. In such cases intent and the reasonableness of the force would seem relevant to liability.

Although I am aware of the often-repeated statement that personal rights are more important than property rights, where the owner has stored his valuables representing his life's accumulations, his livelihood business, his tools and implements, and his treasured antiques as appears in the case at bar, and where the evidence is sufficient to sustain a finding that the installation was intended only as a warning to ward off thieves and criminals, I can see no compelling reason why the use of such a device alone would create liability as a matter of law.

For cases considering the devices a property owner is or is not privileged to use to repel a mere trespasser, see Hooker v. Miller, supra, 37 Iowa 613 (trap gun set in orchard to repel); State v. Vance, supra, 17 Iowa 138 (1864); Phelps v. Hamlett, Tex.Civ.App., 207 S.W. 425 (1918) (bomb set in open air theater); State v. Plumlee, supra, 177 La. 687, 149 So. 425 (1933) (trap gun set in open barn); Starkey v. Dameron, supra, 96 Colo. 459, 21 P.2d 1112 (1933) (spring gun in outdoor automatic gas pump); State v. Childers, 133 Ohio St. 508, 14 N.E.2d 767 (1938) (trap gun in melon patch); Weis v. Allen, 147 Or. 670, 35 P.2d 478 (1934) (trap gun in junkyard); Johnson v. Patterson, 14 Conn. 1 (1840)

(straying poultry poisoned); Bird v. Holbrook, supra, 4 Bingham's Reports 628 (England, 1828) (spring gun in garden enclosed by wall of undisclosed height).

For cases apparently holding dangerous devices may be used to ward off and prevent a trespasser from breaking and entering into an inhabited dwelling, see State v. Vance, supra; Grant v. Hass, supra; Scheuermann v. Scharfenberg, supra; Simpson v. State, supra; United States v. Gilliam, 1 Hayw. & H. 109, 25 Fed.Cas. 1319, p. 1320, No. 15,205 a (D.C. 1882); State v. Childers, supra; Gramlich v. Wurst, 86 Pa. 74, 80 (1878).

Also, for cases considering the devices a property owner is privileged to use to repel an invader where there is no threat to human life or safety, see Allison v. Fiscus, 156 Ohio St. 120, 100 N.E.2d 237, 44 A.L.R.2d 369; State v. Barr, 11 Wash. 481, 39 P. 1080 (1895); State v. Childers, supra; Weis v. Allen, supra; Pierce v. Commonwealth, supra; Johnson v. Patterson, supra; Marquis v. Benfer, supra.

In Allison v. Fiscus, supra, at page 241 of 100 N.E.2d, it is said: "Assuredly, * * * the court had no right to hold as a matter of law that defendant was liable to plaintiff, as the *defendant's good faith* in using the force which he did to protect his building and the good faith of his belief as to the nature of the force he was using were questions for the jury to determine under proper instructions." (Emphasis supplied.)

In State v. Barr, supra, at page 1081 of 39 P., the court said: " * * * whether or not what was done in a particular case was justified under the law must be a question of fact, or mixed law and fact, and not a pure question of law."

In State v. Childers, supra, it is said at page 768 of 14 N.E.2d: "Of course the act in question must be done maliciously * * * and *that fact must be proved and found by the jury to exist.*" (Emphasis supplied.)

Also see State v. Metcalfe, 203 Iowa 155, 212 N.W. 382, where this court discussed the force that a property owner may use to oppose an unlawful effort to carry away his goods, and held the essential issue in such matters which must be explained to the jury is not the nature of the weapon employed but whether the defendant employed only that degree of force to accomplish such purpose which a reasonable person would deem reasonably necessary under the circumstances as they appeared in good faith to the defendant.

Like the Ohio Supreme Court in Allison v. Fiscus, supra, I believe that the basis of liability, if any, in such a case should be either the intentional, reckless, or grossly negligent conduct of the owner in setting the device.

If this is not a desirable expression of policy in this jurisdiction, I suggest the body selected and best fitted to establish a different public policy would be the State Legislature.

The next question presented is, which view of the law set out above did the trial court take, the view that the mere setting of a spring gun or like device in defendants' building created liability for the resulting injury, or the view that there must be a setting of the device with an intent to shoot, kill, or seriously injure one engaged in breaking and entering this house? Appellants argue this was not made clear in the court's instructions to the jury and, being material, is error. I agree.

They contend Instructions Nos. 2, 5 and 6, to which proper and timely exceptions were taken, are improper, that they were so inadequate and confusing as to constitute reversible error and required the trial court to grant their motion for a new trial.

Instruction No. 5 provides:

"You are hereby instructed that one may use reasonable force in the protection of his property, but such right is subject to the qualification that one may not *use such means of force* as will take human life

or inflict great bodily injury. Such is the rule even though the injured party is a trespasser and is in violation of the law himself." (Emphasis supplied.)

Instruction No. 6 provides:

"An owner of premises is prohibited from willfully or intentionally injuring a trespasser by means of force that either takes life or inflicts great bodily injury; and therefore a person owning a premise is prohibited from setting out 'spring guns' and like dangerous devices which will likely take life or inflict great bodily injury, *for the purpose of harming trespassers.* The fact that the trespasser may be acting in violation of the law does not change the rule. The only time when such conduct of setting a 'spring gun' or a like dangerous device is justified would be when the trespasser was committing a felony of violence or a felony punishable by death, or where the trespasser was endangering human life by his act." (Emphasis supplied.)

Specific objections were made to Instruction No. 2, inter alia, to the statement that in this jurisdiction the use of force which may take life or inflict serious bodily injury might be used was restricted to occupied dwellings or where specific statutes permitted its use; to the reference to an Iowa case wherein the subject related to a *simple trespass* in a vineyard where no breaking and entry of a building was involved, without pointing out the difference as to permissible force permitted to repel one entering the owner's buildings with intent to ravish and steal valuable personal property; and to the error resulting when the court wrongfully directed the jury to find defendants' acts were illegal by stating "that in so doing he violated the law and became liable for injuries sustained by the plaintiff."

In other words, defendants contended that this instruction failed to tell the jury the extent of defendants' rights to defend against burglary in buildings other than their dwelling, inferring they have no right

to employ a device which is dangerous to life and limb, regardless of its intended purpose only to ward off or scare the intruder.

Defendants also specifically objected to Instruction No. 5 because it also limited the right or privilege of one to use dangerous devices in any way to protect his property, and made it applicable to cases where the invader was in violation of the law, without classifying his offense.

Instruction No. 6 was specifically objected to as not being a proper statement of the law, as being inadequate, confusing, and misleading to the jury in regard to the vital issues in this case, because it would not be possible for a jury to understand the court when it told the jurors an owner of premises is prohibited from willfully or intentionally injuring a trespasser by means of force that either takes life or inflicts great bodily injury, and then told them a person owning premises is prohibited from setting out spring guns and like dangerous devices which will "likely" take life or inflict great bodily injury, *for the purpose of harming trespassers.*

Appellants argue from these instructions the jury could conclude it must find any setting of a spring gun or such other device to protect his property from a burglar or other criminal invader made the owner *absolutely liable* for injuries suffered by the intruder, unless the building being so protected was a dwelling, regardless of the owner's intent and purpose in setting the device in his building. On the other hand, in Instruction No. 6 the court refers to such a *setting with the intent and purpose* of killing or seriously injuring the intruder in order to make the owner liable for damages.

I too find these instructions are confusing. If the court was telling the jury, as appellants contend, that an owner of a premise may not set a spring gun to protect his property unless the trespasser's act amounts to a felony of violence and

endangers human life, the phrase used, "for the purpose of harming trespassers", introduces the element of intent and would tend to confuse the jury as to the law on that issue. If the issue here was that such an intent was necessary to establish liability, the instruction was erroneous and confusing; otherwise the error was without prejudice.

I would, therefore, conclude there is merit in appellants' contention that the law was not made clear to the jury as to whether the act of placing a spring gun on this premise was prohibited by law, or whether the act of placing such a device requires a finding of intention to shoot the intruder or cause him great bodily injury to establish liability. I cannot tell whether the jury found liability on the mere act of placing the gun as Mr. Briney did in this house or on the fact that he did so with the intent to seriously harm a trespasser.

In the case at bar, as I have pointed out, there is a sharp conflict in the evidence. The physical facts and certain admissions as to how the gun was aimed would tend to support a finding of intent to injure, while the direct testimony of both defendants was that the gun was placed so it would "hit the floor eventually" and that it was set "low so it couldn't kill anybody." Mr. Briney testified, "My purpose in setting up the gun was not to injure somebody. I thought more or less that the gun would be at a distance of where anyone would grab the door, it would scare them", and in setting the angle of the gun to hit the lower part of the door, he said, "I didn't think it would go through quite that hard."

If the law in this jurisdiction permits, which I think it does, an explanation of the setting of a spring gun to repel invaders of certain private property, then the intent with which the set is made is a vital element in the liability issue.

In view of the failure to distinguish and clearly give the jury the basis upon which it should determine that liability issue, I would reverse and remand the entire case for a new trial.

As indicated, under these circumstances the trial court should not have submitted the punitive damage issue to the jury in this case. By Instruction No. 14 the learned trial judge wrongfully instructed the jury that the law of Iowa allows a jury in such a case to award exemplary damages if it is found that the act complained of is wanton and reckless or where the defendants are guilty of malice. True, this instruction was in accordance with certain past pronouncements of this court and no objection was taken to the substance of the instruction, but defendants have always contended under these circumstances the court should not have submitted the question of exemplary damages to the jury. We have never extended the exemplary damage law to cover such cases and I maintain we should not do so now, directly or indirectly. Without such a pronouncement to that extent, or some legislation extending that right to a person engaged in a serious criminal offense at the time of his injury, I believe the trial court possessed no jurisdiction to permit the jury to pass on such a claim, even though no objections thereto were made by the defendants.

Although this subject has been considered and discussed in several Iowa cases, including Sebastian v. Wood, 246 Iowa 94, 66 N.W.2d 841, and citations, granting exemplary damages for injury due to alleged reckless driving, and Amos v. Prom, 115 F.Supp. 127, relating to alleged mental suffering and humiliation when denied admission to a public dance hall, none seem to consider whether punitive damages are permitted where the injured party was, as here, engaged in a criminal act such as breaking and entering, burglary, or other serious offense. Also see Morgan v. Muench, 181 Iowa 719, 156 N.W. 819, and Stricklen v. Pearson Construction Co., 185 Iowa 95, 169 N.W. 628, and citations in each.

Although I have found no authority to assist me in my view, I am convinced it is correct in principle and should be adopted in this jurisdiction. In so doing, I adhere to the rule recognized in Amos v. Prom, supra, at 137, et seq., where it is stated: " * * * the principle that intentional wrongful action in disregard for the rights of others amounts to conduct to which the law will attach a penalty and deterrent by way of exemplary damages." However, I would not extend this privilege to a case where the injured party's conduct itself was criminal and extremely violative of good public behavior.

From a general review of the subject of exemplary or punitive damages beginning with Wilkes v. Wood (1763), Lofft 1, 98 English Rep. 489, 498, which stated such "Damages are designed not only as a satisfaction to the injured person, but likewise as a punishment to the guilty, to deter from any such proceeding for the future, * * * ", I find that both in England and the United States the purpose of this law was to restrain arbitrary and outrageous use of power. See 70 Harvard L.Rev. 517, 519 (1957), Exemplary Damages in the Law of Torts.

In Hawk v. Ridgway, 33 Ill. 473, 475 (1864), the Illinois court said, "Where the wrong is wanton, or it is willful, the jury are authorized to give an amount of damages beyond the actual injury sustained, as a punishment, and to preserve the public tranquillity."

Some courts rationalize punitive damages on the basis that they provide an outlet for the injured party's desire for revenge and thereby help keep the peace. Some others rationalize it as a punishment to defendant and to deter him and others from further antisocial conduct. It has also been said punitive damages are ordinarily a means of increasing the severity of the admonition inherent in the compensatory award. See 44 Harvard L.Rev. 1173 (1931).

A further study of this law indicates punitive damages have a direct relation to the criminal law. Historically, it was undoubtedly one of the functions of tort law *to deter* wrongful behavior. However, in modern times its priority has become that of compensating the victim of the injury. The business of punishing wrongdoers has increasingly become the exclusive purview of the criminal law. See Pollock and Maitland, History of English Law, Vol. II, 2d Ed. (1898), § 1, pp. 449–462.

The award of punitive damages in modern tort law gives rise to considerable anomalies. Such damages, of course, go to the private purse of the individual plaintiff and may be classified a windfall as to him in excess of his actual losses due entirely to a social judgment about defendant's conduct.

In properly applying this law Professor McCormick, in his treatise on damages found on pages 276 and 277 in McCormick on Damages (1935), said, "Perhaps the principal advantage is that it does tend to bring to punishment a type of cases of oppressive conduct, such as slanders, assaults, minor oppressions, and cruelties, which are theoretically criminally punishable, but which in actual practice go unnoticed by prosecutors occupied with more serious crimes. * * * The self-interest of the plaintiff leads to the actual prosecution of the claim for punitive damages, where the same motive would often lead him to refrain from the trouble incident to appearing against the wrongdoer in criminal proceedings."

So understood, punitive damages are an adjunct to the criminal law, yet one over which the criminal law has no control, and in the United Kingdom, the land of its birth, punitive damages are close to extinct. In Rookes v. Barnard, Appeal Cases (House of Lords, 1964) 1129, at 1221 et seq., the English court of last resort confined the award of punitive damages to a very narrow range of situations. It ruled in an intentional tort case that exemplary

damages could be awarded only in cases (1) for oppressive arbitrary, or unconstitutional acts by government servants, (2) for defendant's conduct which had been calculated by him to make a profit for himself which might well exceed the compensation payable to the injured party, and (3) where expressly authorized by statute.

In the case at bar the plaintiff was guilty of serious criminal conduct, which event gave rise to his claim against defendants. Even so, he may be eligible for an award of compensatory damages which so far as the law is concerned redresses him and places him in the position he was prior to sustaining the injury. The windfall he would receive in the form of punitive damages is bothersome to the principle of damages, because it is a response to the conduct of the defendants rather than any reaction to the loss suffered by plaintiff or any measurement of his worthiness for the award.

When such a windfall comes to a criminal as a result of his indulgence in serious criminal conduct, the result is intolerable and indeed shocks the conscience. If we find the law upholds such a result, the criminal would be permitted by operation of law to profit from his own crime.

Furthermore, if our civil courts are to sustain such a result, it would in principle interfere with the purposes and policies of the criminal law. This would certainly be ironic since punitive damages have been thought to assist and promote those purposes, at least so far as the conduct of the defendant is concerned.

We cannot in good conscience ignore the conduct of the plaintiff. He does not come into court with clean hands, and attempts to make a claim to punitive damages in part on his own criminal conduct.

In such circumstances, to enrich him would be unjust, and compensatory damages in such a case itself would be a sufficient deterrent to the defendant or others who might intend to set such a device.

The criminal law can take whatever action is appropriate in such cases, but the civil law should not compound the breach of proper social conduct by rewarding the plaintiff for his crime. I conclude one engaged in a criminal activity is an unworthy object of largesse bestowed by punitive damages and hold the law does not support such a claim to enrichment in this case.

The admonitory function of the tort law is adequately served where the compensatory damages claimed are high and the granted award itself may act as a severe punishment and a deterrence. In such a case as we have here there is no need to hold out the prospect of punitive damages as an incentive to sue and rectify a minor physical damage such as a redress for lost dignity. Certainly this is not a case where defendants might profit in excess of the amount of reparation they may have to pay.

In a case of this kind there is no overwhelming social purpose to be achieved by punishing defendants beyond the compensatory sum claimed for damages.

Being convinced that there was reversible error in the court's instructions, that the issue of intent in placing the spring gun was not clearly presented to the jury, and that the issue as to punitive damages should not have been presented to the jury, I would reverse and remand the matter for a new trial.

The majority seem to ignore the evident issue of punitive policy involved herein and uphold the punitive damage award on a mere technical rule of civil procedure.